IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUDITH KATHLEEN PERKINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF DELAWARE DHSS/DSSC, )<br>)<br>Defendant. ) | Civ. Action No. 12-50-SLR-CJB |

## REPORT AND RECOMMENDATION

Plaintiff Judith Kathleen Perkins ("Perkins" or "Plaintiff") filed this action for violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, against defendant State of Delaware, Department of Health and Social Services, Division of State Service Centers ("DHSS" or "Defendant"). Presently pending before the Court is Defendant's Combined Motion to Vacate Entry of Default ("Motion to Vacate") and Motion to Dismiss Complaint for Failure to Serve ("Motion to Dismiss") (D.I. 14), and Plaintiff's Motion for Entry of Default Judgment ("Motion for Default Judgment"), (D.I. 15). For the reasons that follow, I recommend that Defendant's Motion to Vacate be GRANTED; Defendant's Motion to Dismiss be DENIED; and Plaintiff's Motion for Entry of Default Judgment be DENIED.

## I. BACKGROUND

On January 18, 2012, Plaintiff, acting pro se, filed a Complaint in this action against Defendant, her former employer.[1] (D.I. 1) On January 26, 2012, Plaintiff, via the use of a

---

[1] Plaintiff had filed charges of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") in January 2008. (D.I. 1 at ¶ 14) Upon exhaustion of the EEOC administrative process, Plaintiff received a Notice of Right to Sue from the EEOC dated October 26, 2011. (*Id.*, ex. 1)

process server, served a summons and the Complaint on a Lisa Wingfield;[2] the summons identifies Ms. Wingfield as allegedly receiving service on behalf of the "State of Delaware / DHSS / DSSC – Office of Management and Budget." (D.I. 3) On February 24, 2012, Plaintiff filed an Application for Entry of Default Against Defendant ("First Application") pursuant to Federal Rule of Civil Procedure 55 ("Rule 55"). (D.I. 4) In that filing, Plaintiff alleged that she had served Defendant in accordance with Federal Rule of Civil Procedure 4 ("Rule 4") by serving the summons on Ms. Wingfield, and claimed that thereafter Defendant had failed to plead or otherwise defend against this action. (*Id.* at 2) On February 27, 2012, the Clerk of this Court denied Plaintiff's First Application, stating that "plaintiff has failed to properly accomplish service pursuant to Fed. R. Civ. P. 4 and 10 Del. C. § 3103(c)." (D.I. 5)

On February 29, 2012, Plaintiff filed an Amended Proof of Service indicating that, in addition to serving the Complaint on Ms. Wingfield, she had also served the Complaint on Defendant in satisfaction of the requirements of Del. Code tit. 10, § 3103(c) ("Section 3103(c)"). (D.I. 6) She asserted she had done so by e-mailing the Complaint (an e-mail that did not include as attachments certain of the exhibits to the Complaint) to Michael Barlow, Chief Legal Counsel to the Governor of Delaware, and Elio Battista, Jr., a Deputy Attorney General with the Delaware Department of Justice, on January 26, 2012. (*Id.* at 1) On February 29, 2012, Plaintiff also filed a Renewed Application for Entry of Default Against Defendant ("Renewed Application"). (D.I. 7) In the Renewed Application, Plaintiff asserted that having now properly served Defendant, and in light of Defendant's failure to thereafter plead or otherwise defend against this action,

---

[2] Ms. Wingfield's last name is alternatively spelled throughout the filings in this matter as "Winfield," "Wingfeld," and "Wingfed." (*See, e.g.*, D.I. 3 at 2; D.I. 10 at 2; D.I. 14 at ¶ 5)

2

entry of default was proper. (*Id.* at 2) On April 3, 2012, Judge Sue L. Robinson referred this case to me to "conduct all proceedings, including alternative dispute resolution; [and] hear and determine all motions, through and including the pretrial conference." (D.I. 8)

On May 9, 2012, the Court issued an order denying Plaintiff's Renewed Application on the grounds that the Amended Proof of Service did not indicate "that *the person* of the Attorney General, State Solicitor or Chief Deputy Attorney General has been properly served with a summons and the Complaint," as Section 3103(c) requires, and that the Amended Proof of Service "does not meet the requirements of Federal Rules of Civil Procedure 4(c)(1) and 4(j) . . . ." (D.I. 9 at 1) The Court also found that good cause existed pursuant to Rule 4(m) to extend the time for service, and ordered that Plaintiff must effectuate proper service by May 29, 2012. (*Id.* at 2)

On May 16, 2012, Plaintiff again served the Complaint on Ms. Wingfield of the "State of Delaware Office of Management and Budget" with a summons served by process server, (D.I. 10), and served Attorney General Joseph R. Biden III with the Complaint by certified mail, (D.I. 11). Once again, Defendant did not respond. On June 12, 2012, Plaintiff filed another Application for Entry of Default Against Defendant ("Third Application"). (D.I. 12) In the Third Application, Plaintiff asserted that she had now properly served Defendant pursuant to Rule 4 and Section 3103(c) by serving the summons and Complaint on Ms. Wingfield and on Attorney General Biden, and that Defendant had failed to plead or otherwise defend against the action. (*Id.* at 2) On June 13, 2012, the Clerk of this Court entered the default pursuant to Rule 55(a). (D.I. 13)

On June 14, 2012, Defendant filed the Motion to Vacate and the Motion to Dismiss. (D.I.

14) Shortly thereafter, on June 21, 2012, Plaintiff filed her Motion for Default Judgment. (D.I. 15) The respective motions have been fully briefed and are now ripe for decision.

## II. DISCUSSION

In reviewing the pending motions, the Court is first required to examine whether the Clerk's entry of default was proper and, if so, whether a default judgment should be entered pursuant to Rule 55. Because Defendant argues that the entry of default was improper due to Plaintiff's failure to timely and properly serve it with the Complaint, the resolution of these questions necessarily implicates an analysis of whether proper service was effected. Lastly, to the extent that service was not proper, the Court must then decide whether the Complaint should be dismissed due to the failure of Plaintiff to timely serve Defendant. I will take up each of these issues in turn.

### A. Whether the Entry of Default Should be Vacated or a Default Judgment Should Enter

#### 1. Legal Standards

##### a. Setting Aside an Entry of Default

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause . . . ." The United States Court of Appeals for the Third Circuit has stated that it does not favor the entry of a default or a default judgment and that it "require[s] doubtful cases to be resolved in favor of the party moving to set aside the default [] so that cases may be decided on their merits." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984) (internal quotation marks and citations omitted). As a general matter, in deciding whether to set aside a default pursuant to Rule 55(c), the court should consider three factors: "(1) whether

4

the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Id.* at 195. The Third Circuit has explained, however, that this three-factor analysis is inapplicable when a default was not properly entered, such as when the complaint-at-issue was not properly served. In such a circumstance, the Court may not enter default judgment against the defendant. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *see also Shomide v. ILC Dover LP*, No. 03-1019-SLR, 2006 WL 2042969, at *5 (D. Del. July 20, 2006); *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 603 n.3 (D.N.J. 2003).

### b. Service of a Complaint

Federal Rule of Civil Procedure 4 sets forth the requirements for service on a state or state-created governmental organization:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
>
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
>
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j)(2).

Delaware's Superior Court has a similar procedural rule regarding the service of a governmental organization. Delaware Superior Court Rule 4(f)(1)(IV) reads that a summons may be served:

> Upon a municipal corporation or other governmental organization subject to suit by delivering a copy of the summons, complaint and affidavit, if any, to the chief executive officer thereof or by serving copies thereof in the manner prescribed by law for the service of summons upon such defendant.

5

Del. Super. Ct. R. 4(f)(1)(IV); *see also Drake v. State*, No. 78C-DE-73, 1979 WL 195352, at *1 (Del. Super. Ct. Nov. 5, 1979). In addition, Section 3103(c) requires that:

> No service of summons upon the State, or upon any administrative office, agency, department, board or commission of the state government, or upon any officer of the state government concerning any matter arising in connection with the exercise of his or her official powers or duties, shall be complete until such service is made upon the person of the Attorney General or upon the person of the State Solicitor or upon the person of the Chief Deputy Attorney General.

Del. Code tit. 10, § 3103(c). Delaware courts have read Superior Court Rule 4(f)(1)(IV) to require that, in a case where a state governmental organization is sued, not only must the governmental organization's chief executive officer be served, but the requirements of Section 3103(c) must also be followed. *Miller v. State*, No. 08C-07-231-JOH, 2009 WL 1900394, at *4 (Del. Super. Ct. June 16, 2009); *Drake*, 1979 WL 195352, at *2–3.

### 2. The Parties' Contentions

In its Motion to Vacate, Defendant argues that the entry of default must be vacated because Plaintiff has failed to serve DHSS either in compliance with Rule 4(j) or Section 3103(c). First, Defendant argues that Plaintiff has failed to comply with Rule 4(j)(2)(A) because that part of the Rule requires Plaintiff to serve the chief executive officer of the state agency being sued (here DHSS), and she has not done so. (D.I. 14 at ¶¶ 4–7) Instead, Plaintiff served Ms. Wingfield, a former Administrative Specialist at the state of Delaware's Office of Management and Budget ("OMB")—a different state agency than DHSS. (*Id.* at ¶ 5; D.I. 19 at ¶ 7) Second, Defendant asserts that Plaintiff has failed to comply with Rule 4(j)(2)(B). Defendant argues that state law's requirements for service have not been met because, *inter alia*, Plaintiff has not satisfied the requirements of Section 3103(c), in that this statute requires service on the

Attorney General, State Solicitor or Chief Deputy Attorney General *in person*, not by mail or even by certified mail—the method used by Plaintiff here. (D.I. 14 at ¶ 6) Accordingly, Defendant argues that Plaintiff has failed to properly serve DHSS. (*Id.* at ¶ 7)

In response, Plaintiff appears to argue that for three independent reasons, the requirements of Rule 4(j) and Section 3103(c) have been met and, therefore, a default judgment should be entered. First, Plaintiff contends that service on OMB was sufficient to effectuate service on Defendant because the state's "Office of Labor Relations," a subsection of the OMB, represented Defendant at the administrative level during the EEOC inquiry that pre-dated this litigation. (D.I. 18 at 1–2; D.I. 20 at 1–3) She further alleges that five individuals—a supervisory civil rights analyst for the Employment Litigation Section of the Civil Rights Division of the U.S. Department of Justice, two representatives of the U.S. Equal Employment Opportunity Commission's ("EEOC") Philadelphia District Office, Deputy Attorney General Battista, and an individual with the Office of Labor Relations within OMB—all told her that OMB represents Defendant in all cases involving the EEOC. (D.I. 20 at 2) Second, Plaintiff asserts that service on the State Attorney General by certified mail was proper under Section 3103(c). (D.I. 20 at 2–3) Third, Plaintiff appears to argue that because Defendant clearly has actual notice of this action, as evidenced by its filing of the Motion to Vacate and the Motion to Dismiss, this should obviate the need for proper service under the law. (D.I. 18 at 2)

### 3. Entry of Default or Default Judgment Is Not Appropriate

The Court finds that an entry of a default or default judgment is improper here because service has not yet been technically effectuated.

Plaintiff first argues that she appropriately served OMB, thereby satisfying Rule

4(j)(2)(A). However, that prong requires service on DHSS's "chief executive officer," which Defendant represents is DHSS Secretary Rita Landgraf. Fed. R. Civ. P. 4(j)(2)(A); (D.I. 19 at ¶ 7). Plaintiff may be correct that a subdivision of OMB represents Defendant when litigation matters such as this one are before the EEOC. Nevertheless, OMB is a different state governmental entity than is DHSS, and pursuant to Rule 4(j)(2)(A), OMB is not authorized to accept service for DHSS in a civil litigation matter pending in federal court.[3] *See, e.g., Dorr v. Alameda Cnty. Prob. Dept.*, No. C-11-04477 (DMR), 2012 WL 423745, at *2–3 & n.2 (N.D. Cal. Feb. 8, 2012) (finding that plaintiff did not properly serve county under Rule 4(j)(2)(A) when, instead of serving county's chief executive officer, plaintiff served the chief of the county's probation department, as plaintiff had a "mistaken belief" that the probation department was a stand-alone government entity). Because Plaintiff did not serve the Complaint on DHSS's chief executive, she has not properly complied with Rule 4(j)(2)(A).[4]

---

[3] Indeed, Plaintiff does not allege that any of the five federal or state governmental officials whom she refers to in her filings told her that OMB would represent DHSS for purposes of *this federal action*. Instead, Plaintiff alleges simply that these persons confirmed for her that OMB's Office of Labor Relations represented Defendant for purposes of the prior EEOC administrative proceeding. (D.I. 20 at 2)

[4] In order to properly serve DHSS's chief executive under Rule 4(j)(2)(A), Plaintiff would have to cause an adult who is not a party (i.e., a process server) serve a copy of the summons and the Complaint in person (i.e., not by mail). Fed. R. Civ. P. 4(c)(2); *Reyes v. Fircrest Sch.*, No. C11-0778JLR, 2012 WL 3144915, at *3 (W.D. Wash. Aug. 1, 2012). Federal law is less clear on whether the individual serving process would be required to hand these documents only to the DHSS chief executive herself, or whether service to the chief executive's subordinate or a person authorized to receive the documents on her behalf would suffice. *See, e.g., Neil v. Randolph*, No. 09-6242, 2010 WL 1727809, at *3-4 (E.D. La. Mar. 17, 2010). In any event, in light of the practical difficulties that Plaintiff is likely to encounter in attempting to track down the chief executive of DHSS in order to serve Defendant under Rule 4(j)(2)(A) (if she is permitted to do so by the District Court), counsel for Defendant may wish to communicate to Plaintiff whether any other person in DHSS is authorized to accept service on the DHSS Secretary's behalf.

Plaintiff next argues that she appropriately served Defendant under state law service rules, such that she satisfied Rule 4(j)(2)(B), which requires that she serve a copy of the summons and of the Complaint "in the manner prescribed by [Delaware] law for serving a summons or like process on such a defendant." Plaintiff contends that she complied with this portion of Rule 4(j)(2) by also serving Attorney General Biden with the Complaint via certified mail.[5]

As an initial matter, like the applicable federal rule, Delaware Superior Court Rule 4(f)(1)(IV) required Plaintiff to serve DHSS's chief executive. *Miller*, 2009 WL 1900394, at *4–5. Since Plaintiff did not do so, she could not have complied with the service rules under Delaware law either.

Moreover, pursuant to Section 3103(c), in order to comply with Delaware service rules, Plaintiff must also have arranged for *hand delivery* of the summons and Complaint to either the Attorney General, the State Solicitor, or the Chief Deputy Attorney General. Delaware caselaw is clear that such service must be made *upon the person* of one of the three individuals identified in Section 3103(c). *See, e.g., Buchanan v. Biden*, No. 08-575-SLR, 2008 WL 5043127, at *2 (D. Del. Nov. 24, 2008) (noting, in considering a petitioner's request for mandamus relief, that

---

[5] The method for serving a state or state-created governmental organization in Rule 4(j)(2)(B) is an alternative to complying with that set out in Rule 4(j)(2)(A), not an additional service requirement. On its face, the Rule requires that service be proper under Rule 4(j)(2)(A) "or" Rule 4(j)(2)(B). Fed. R. Civ. P. 4(j)(2); *see also Young v. City of Houston*, 471 Fed. App'x 389, 390 (5th Cir. 2012) (noting that Rule 4(j)(2) may be satisfied by "either" serving a defendant in compliance with Rule 4(j)(2)(A) or Rule 4(j)(2)(B)); *Hupp v. San Diego Cnty. Dist. Att'y*, No. 12-CV-492-IEG (RBB), 2012 WL 2887229, at *2 (S.D. Cal. July 12, 2012) (same); *Dougherty v. Snyder*, No. 1:CV-10-1071, 2010 WL 3168323, at *1 (M.D. Pa. July 29, 2010) (noting that Rule 4(j)(2) "*grants the option* of serving a federal complaint on a state or local governmental entity by using state service rules") (emphasis added).

Section 3103(c) allows for the personal service not only of the Delaware Attorney General, but also of two other legal officers, such that the Attorney General's pending military deployment would not work a hardship on petitioner's ability to bring suit against the State in federal or state court). Service by mail, even certified mail, is not effective to satisfy Section 3103(c)'s requirements. *Miller*, 2009 WL 1900394, at *6 (stating that plaintiff must serve the state agency defendant in compliance with Section 3103(c) by "*personally serving* either the Attorney General, the State Solicitor, or the Chief Deputy Attorney General") (emphasis added).[6] Because Plaintiff did not personally serve the Attorney General with the Complaint, she did not complete service in accordance with the dictates of state law. For this additional reason, she did not comply with Rule 4(j)(2)(B).

Finally, Plaintiff's submissions can be read to suggest that Defendant's actual notice of the lawsuit obviates the need for proper service under Rule 4(j)(2). However, the Third Circuit has made it clear that actual notice is not a substitute for compliance with the service rules of the Federal Rules of Civil Procedure because "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 56 (3d Cir. 1986) (citation omitted); *see also Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996) ("[T]his court has made clear that notice cannot by itself validate an otherwise defective service.") (internal quotations marks and citation omitted). As a result, the fact that Defendant is aware of the instant lawsuit does not

---

[6] Further emphasizing the preference for personal service as the chief means of service of process, this Court has noted that Delaware law indicates that "personal service is the primary method of obtaining jurisdiction over the person of a defendant; and, in the absence of a statute authorizing a substitutional method, service of process must be personal." *Shomide*, 2006 WL 2042969, at *3 (quoting *McCoy v. Hickman*, 15 A.2d 427 (Del. Super. Ct. 1940)).

forgive the requirement that Defendant be properly served pursuant to Rule 4.

For these reasons, the Court recommends that Defendant's Motion to Vacate be granted and Plaintiff's Motion for Default Judgment be denied.

### B.     Motion to Dismiss

#### 1.     Legal Standard

Federal Rule of Civil Procedure 4(m) governs the fate of an action in which the defendant has not been served or has been improperly served:

> If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). While courts must grant pro se plaintiffs leniency in considering their filings, pro se plaintiffs are nevertheless expected to "follow the rules of procedure and the substantive law." *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 603 (D. Del. 2007). Accordingly, this Court has held that the pro se status of a plaintiff "does not excuse his failure to . . . effectuate service in accordance with the Federal Rules." *Id.* at 604.

In deciding whether to extend a plaintiff's deadline to serve the defendant pursuant to Fed. R. Civ. P. 4(m), courts must engage in a two-part inquiry. First, a court must determine whether there is good cause for the failure of proper service; if so, the court must extend the time for service and the inquiry is complete. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Second, if no good cause is found, the court may, at its discretion, either grant an extension for service or dismiss the case without prejudice. *Id.* In evaluating whether good cause exists for the failure of proper service, courts generally consider three factors: "(1) whether

the plaintiff has reasonably attempted to effect service; (2) whether the defendant is prejudiced by the absence of timely service; and (3) whether the plaintiff moved for an extension of time for effecting service." *Thompson*, 501 F. Supp. 2d at 604. The plaintiff's reasons for failure to obtain good service within the time frame set forth by Rule 4(m) should be the court's chief focus in considering whether good cause exists. *Id.*

### 2. Dismissal of the Complaint is Not Appropriate

In its Motion to Dismiss, Defendant argues that because Plaintiff has not properly served DHSS within the time frame set forth by Rule 4(m), the action must be dismissed. (D.I. 14 at ¶ 8) It further asserts that "good cause" for the failure to serve has not been established, in that "inadvertence, half-hearted efforts, and misplaced reliance do[] not constitute good cause." (*Id.* at ¶ 10 (quoting *Ayres*, 99 F.3d at 568)). In response, Plaintiff argues that to the extent the Court finds that service was improper, good cause pursuant to Rule 4(m) has been established, as Plaintiff has made good faith, diligent efforts to attempt to comply with the applicable service rules. (D.I. 20 at 3–5)

I recommend that the Court find that Plaintiff has established that good cause exists for the failure to timely serve Defendant, and that, as a result, Plaintiff be granted an extension of time to properly serve her Complaint.

First, Plaintiff has engaged in repeated, reasonable attempts to serve Defendant. At the outset, Plaintiff attempted to seek out the appropriate person to serve by requesting this information from several individuals connected in some way to Defendant or to the prior EEOC action relating to this case. Plaintiff then attempted to effectuate service repeatedly, in an effort to satisfy both prongs of Rule 4(j)(2). This is not a case where Plaintiff has ignored this Court's

orders or has neglected to prosecute the matter aggressively. Instead, at each stage, when advised by the Court of a failure in her efforts to serve Defendant, Plaintiff has promptly responded with renewed (albeit insufficient) attempts at service and by seeking entry of default when no response to her pleading was forthcoming by Defendant. This Court's prior decisions indicate that when a plaintiff (as here) makes diligent, repeated efforts to effect service, such efforts weigh in favor of finding good cause to be established.[7]

Second, Defendant has not established that it has been prejudiced by Plaintiff's failure to properly serve it. Defendant has received actual notice of this action, which is a "crucial" fact weighing against a finding of prejudice. *United States v. Nuttall*, 122 F.R.D. 163, 167 (D. Del. 1988) ("[A]ctual notice precludes any finding of detrimental reliance by, or prejudice to, defendant [] notwithstanding that service of process did not comport with every detail of Fed. R. Civ. P. 4."); *see also Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997) (noting that actual notice to a defendant of the lawsuit militates against a finding of prejudice, whereas lack of actual notice might give rise to a plausible claim that the failure to timely serve has damaged a defendant's ability to defend the action). Indeed, in its Motion to Dismiss, Defendant does not even allege that it has been prejudiced in this regard.

---

[7] *Compare DeSouza v. Pettinaro Constr. Co., Inc.*, No. 05-787-SLR, 2009 WL 1220533, at *5 (D. Del. May 5, 2009) (finding good cause existed for plaintiff's failure to properly serve defendant, where plaintiff made "more than reasonable efforts" to do so, including searching public records, contacting family members and retaining an investigator to locate the proper individual to serve), *and United States v. Nuttall*, 122 F.R.D. 163, 167 (D. Del. 1988) (finding that the plaintiff's repeated attempts to serve the defendant—including twice by mail and via the repeated assistance of government officials and a process server—"border[ed] on heroic," thus weighing in favor of finding good cause), *with Gonzalez v. E.I. Dupont Nemours & Co.*, No. 06-643-JJF, 2007 WL 1034943, at *1 (D. Del. Apr. 4, 2007) (rejecting a finding of good cause where the plaintiff's single service attempt failed due to a mistake on the summons and plaintiff made no further attempts to serve the defendant).

Finally, Plaintiff has not moved for an extension of time in which to effect service. However, this Court has held that the third factor in the good cause analysis can be read as "simply a subset of the first factor, which considers the diligence and reasonableness of plaintiff's efforts." *Nuttall*, 122 F.R.D. at 167. To the extent that Plaintiff in good faith believed (as it appears she did) that her respective prior efforts to serve Defendant were each in compliance with the law and the Court's orders, her failure to seek an extension of time to complete service does not speak to a lack of diligence on her part.

Accordingly, all three factors weigh in favor of a finding of good cause and the grant of an extension of time for Plaintiff to properly serve her Complaint.[8] For these reasons, the Court recommends that Defendant's Motion to Dismiss be denied and that Plaintiff be afforded an additional thirty days to properly serve her Complaint.

## IV. CONCLUSION

For the reasons set forth above, I recommend that this Court (1) GRANT Defendant's Motion to Vacate; (2) DENY Defendant's Motion to Dismiss; and (3) DENY Plaintiff's Motion for Default Judgment. I also recommend that Plaintiff be afforded an additional thirty days to properly serve her Complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the

---

[8] In light of this finding, an analysis of the second prong of *Petrucelli*—whether the Court should exercise its discretion to extend the service deadline despite a finding of no good cause—is unnecessary here.

loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, http://www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: September 27, 2012

*[signature]*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE