## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JUDITH KATHLEEN PERKINS,               )
                                       )
      Plaintiff,                   )
                                       )
    v.                               )    Civ. Action No. 12-50-SLR-CJB
                                       )
STATE OF DELAWARE DHSS/DSSC,           )
                                       )
      Defendant.                   )

### REPORT AND RECOMMENDATION

In this civil rights action filed pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. 2000e, *et seq.*, Plaintiff Judith Kathleen Perkins ("Plaintiff" or "Perkins") brought suit

against her former employer, defendant State of Delaware, Department of Health and Social

Services, Division of State Service Centers ("DHSS" or "Defendant"). (D.I. 1)  Pending before

the Court is Defendant's motion to dismiss for failure to state a claim upon which relief may be

granted, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (D.I. 27)  For the

reasons that follow, the Court recommends that the Motion be DENIED.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a Delaware resident and former employee of the State Office of Volunteerism

("SOV"), a unit of the Division of State Service Centers ("DSSC"), which in turn, is a division

within DHSS. (D.I. 1 at ¶ 5)  Plaintiff was the Deputy Unit Director for the SOV when Andrew

Kloepfer ("Kloepfer") was hired as the SOV Director in late January 2007. (*Id.* at ¶¶ 5-6)

Plaintiff alleges that, during an SOV staff meeting in Dover that occurred within days of

Kloepfer's hire, Kloepfer called "subordinate staff members names, made threats, leaned over

tabletops pointing his fingers in [employees'] faces while screaming at those persons [and] slammed his fists on tabletops." (*Id.* at ¶ 6) Kloepfer is alleged to have stormed out of the meeting after displaying this "frightening" behavior, slamming the door behind him. (*Id.*) Plaintiff also asserts that Kloepfer's immediate supervisor, Deputy Division Director Wykoff ("Wykoff"), was at this meeting. (*Id.*) Division Director Upshur ("Upshur") is alleged to have thereafter determined that, as a result of the incident, Wykoff should "extend Kloepfer's probationary period from one year of employment probation to two years." (*Id.*)

Plaintiff alleges that Kloepfer's "violent outbursts" nevertheless continued. (*Id.* at ¶ 7) She states that by early October 2007, Kloepfer's "[v]iolent, retaliatory and discriminatory behaviors targeted at [her] became weekly, sometimes daily occurrences[.]" (*Id.*) Plaintiff further contends that she reported these "behaviors" to Wykoff and Upshur; she also states that in November 2007, she reported them to Mark Monroe ("Monroe"), a human resources representative at the State's Division of Management Services, who promised to investigate. (*Id.*) Plaintiff alleges that in the following weeks, Kloepfer's "behaviors escalated." (*Id.*) She then contacted the State's Employee Assistance Program ("EAP"); after three telephone sessions with an EAP counselor, the counselor advised Plaintiff that she was "at-risk" and suggested that she "seek greater authority within or outside of State employment." (*Id.*) Plaintiff then allegedly contacted "HR staff" at the State's Office of Management and Budget ("OMB"); these persons informed Plaintiff that the matter would be "'looked into'" and suggested that Plaintiff consider contacting the Equal Employment Opportunity Commission ("EEOC"). (*Id.*)

In December 2007, Plaintiff made a request to Kloepfer for a transfer to "an alternate work location within [her] current position[,]" and later made the same request to Wykoff,

Upshur, and Monroe. (*Id.* at ¶ 8)  In January 2008, Plaintiff requested a lateral transfer. (*Id.*)
Both of these requests were denied without explanation. (*Id.*)  At this time, Plaintiff alleges that
it was "common knowledge in the SOV" that Plaintiff was "locking herself" in her office every
day. (*Id.*)

On February 14, 2008, Plaintiff alleges that Kloepfer "attacked" her while she was in her
office. (*Id.* at ¶ 9)  Plaintiff states that this attack occurred in full view of a video camera, and
that thereafter, Plaintiff screamed, could not catch her breath, and could only speak "somewhat
coherently" fifteen minutes later. (*Id.*)  At this point, she reported the incident to Monroe,
Monroe's office, and the SOV's Division Director. (*Id.*)  Monroe is said to have promised to
report the attack to police and to further investigate "the violence, retaliation and discrimination"
of Kloepfer and Upshur. (*Id.*)

Plaintiff states that she returned to work the next day, February 15, 2008, but states that
no one from Monroe's office followed up with her that day, nor were the police summoned. (*Id.*)
Plaintiff does allege that the Division Director's administrative assistant informally made
Plaintiff aware that Kloepfer had been sent home early on February 14 and that he had been told
to work from home on February 15. (*Id.*)

On February 15, Plaintiff states that she was examined by a doctor, who informed her that
she could not return to work under current conditions. (*Id.* at ¶ 10)  She alleges that she had been
diagnosed with ocular migraines during the previous month and that she was "later diagnosed
with Post Traumatic Stress Disorder."  Plaintiff states that both of these diagnoses were "due to
violent, retaliatory, and discriminatory work conditions." (*Id.*)  She thereafter went out on leave
pursuant to the terms of the Family and Medical Leave Act. (*Id.* at ¶ 11)

3

Plaintiff states that while on FMLA leave, she had an attorney file a written request on her behalf seeking, *inter alia*, a lateral transfer within DHSS. (*Id.*) Plaintiff alleges that there were six open lateral positions at this time, but that Upshur denied the request. (*Id.*) Thereafter, Plaintiff obtained a disability pension, which she still receives today, on the grounds that she was injured at work and cannot return to her job. (*Id.* at ¶ 13)

Plaintiff attaches certain exhibits to her Complaint, to which she makes reference in the body of the Complaint. (*See, e.g.*, *id.* at ¶ 11) One of those, Exhibit B, is the April 2008 letter from Plaintiff's then-attorney to the Secretary of DHSS seeking a transfer within DHSS (and other relief). (*Id.*, ex. B) In the letter, Plaintiff's attorney writes that Plaintiff felt she was the victim of "workplace violence and sexual harassment . . . at the hands of . . . Kloepfer." (*Id.* at 1) The letter goes on to describe an alleged "pattern of bizarre, threatening, and sexually charged behavior" that Kloepfer exhibited towards Plaintiff from August 2007 through early 2008, including "rubbing her shoulders, discussing extramarital affairs, calling her honey, referring to women as 'mules[,]' discussing lesbians, stating to her that he thinks of her as his wife [and] hollering and beating his fists on his desk." (*Id.*) The letter states Plaintiff filed a grievance with Monroe in January 2008 "noting that this behavior constituted sexual harassment [and] made [Plaintiff] feel physically threatened[.]" (*Id.* at 2) The letter also references the February 14, 2008 incident, stating that on that day, Kloepfer "walked towards [Plaintiff] in a threatening manner." (*Id.*) The letter then states that Plaintiff was forced to go on FMLA leave due to the "psychological impact caused by [this] continued sexual harassment that has significantly restricted her functional work capacity." (*Id.*) The letter seeks certain relief from DHSS; if the relief is not provided, it states that Plaintiff will bring suit in federal court. (*Id.*)

4

### B.     Procedural Background

In January 2008, Plaintiff filed a complaint with the EEOC, and the EEOC issued her a right-to-sue letter in October 2011.  (D.I. 1 at ¶¶ 14-15 & ex. A)  On January 18, 2012, Plaintiff filed her Complaint in this Court.  (D.I. 1)  On April 3, 2012, Judge Sue L. Robinson referred this case to the Court, for the Court to conduct all proceedings through and including the pre-trial conference.  (D.I. 8)  Defendant filed the instant Motion on November 20, 2012, and briefing on the Motion concluded on December 24, 2012.  (D.I. 27, 32)

## II.     STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Courts faced with a motion to dismiss pursuant to Rule 12(b)(6) must generally limit their consideration to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Pragmatus AV, LLC v. TangoMe, Inc.*, Civil Action No. 11-1092-LPS, 2013 WL 571798, at *2 n.2 (D. Del. Feb. 13, 2013).

When presented with a Rule 12(b)(6) motion, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Thus, although a

non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citation omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In addition, courts are obligated to "construe the complaint liberally" in a case where the plaintiff is a *pro se* litigant. *Hussain v. PNC Fin. Servs. Grp.*, 692 F. Supp. 2d 440, 443 (D. Del. 2010); *Williams v. Potter*, 384 F. Supp. 2d 730, 733 (D. Del. 2005).

## III.   DISCUSSION

### A.   Sufficiency of Allegations Regarding Title VII Hostile Work Environment

6

### Claim

Title VII protects individuals from employer discrimination on the basis of race, color,

religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.* In order to set out a Title VII hostile

work environment claim, a plaintiff must demonstrate that: (1) she suffered intentional

discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the

discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a

reasonable person of the same sex in the position; and (5) the existence of respondeat superior

liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990); *Hemphill v. City

of Wilmington*, 813 F. Supp. 2d. 581, 587-88 & n.10 (D. Del. 2011). Defendant asserts that, in

various ways, Plaintiff has not met her burden to allege facts demonstrating a plausible hostile

work environment claim.[1]

### 1.    Intentional discrimination based on sex

As to the first element of a hostile work environment claim, Defendant argues that

Plaintiff has not alleged "facts demonstrating that she was discriminated against because of sex,

---

[1]      The Court does not construe Plaintiff's Complaint as attempting to set out a claim
other than a Title VII hostile work environment claim, and will therefore examine the sufficiency
of the Complaint's allegations accordingly. Although the Complaint does occasionally reference
"retaliatory" behavior or "retaliation[,]" (D.I. 1 at ¶¶ 7, 9, 10, 14), it does not contain sufficient
allegations to set out at least the final two elements of a plausible Title VII retaliation claim (nor
is such a retaliation claim referenced in any of its exhibits). *Phifer v. Sevenson Envtl. Servs.,
Inc.*, Civ. Action No. 11-169-GMS, 2012 WL 868692, at *7 (D. Del. March 14, 2012) (noting
that such a claim requires a showing that (1) a plaintiff engaged in a protected employee activity;
(2) the employer took an adverse employment action after or contemporaneous with the protected
activity; and (3) a causal link exists between the protected activity and the adverse action).
Perhaps the best indication that Plaintiff intended to allege only a hostile work environment
claim comes in her answering brief; the brief's final paragraph explicitly tracks the five elements
of a hostile work environment claim, and explains why, in Plaintiff's view, those elements are
present in the case. (D.I. 31 at 4-5) The brief does not mention a retaliation claim.

let alone that [] any *gender discrimination* was pervasive and regular." (D.I. 27 at 5 (emphasis in original)) Defendant asserts that Plaintiff's allegations "[t]hat Kloepfer was allegedly a mean boss—and for purposes of this motion only, an abusive boss—does not mean that he *discriminated* against Plaintiff because she is a woman." (*Id.* (emphasis in original))

Here, Defendant is correct that in the body of her Complaint, Plaintiff never alleges that Kloepfer's alleged violent or abusive behavior towards her was gender-driven, nor does she plead any facts that might allow for that inference. After alleging facts regarding Kloepfer's "frightening" behavior displayed during the January 2007 SOV staff meeting, Plaintiff states that later in 2007 he targeted her for "[v]iolent, retaliatory and discriminatory behaviors[,]" leading up to the February 2008 incident in Plaintiff's office. (D.I. 1 at ¶¶ 7-9) Yet when setting out these allegations, the body of the Complaint does not make clear what *type* of discrimination is alleged.

However, the letter attached as Exhibit B to the Complaint does provide this type of detail. The letter repeatedly references Plaintiff's claim that she was a victim of sexual harassment at the hands of Kloepfer, and goes on to provide examples of Kloepfer's alleged "pattern" of "bizarre, threatening, and sexually charged behavior" occurring in 2007 and early 2008. As noted above, the letter references many different types of frequent, specific behavior that Kloepfer is alleged to have engaged in, such as "rubbing [Plaintiff's] shoulders, discussing extramarital affairs, calling her honey, referring to women as 'mules', discussing lesbians [and] stating to [Plaintiff] that he thinks of her as his wife[.]"

As noted above, the Court may consider, in reviewing a motion to dismiss, the content of exhibits attached to a Complaint. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196; *see also*

*Watson v. Dept. of Servs. for Children, Youths and Their Families Del.*, Civ. No. 10-978-LPS,

2013 WL 1222853, at *5 (D. Del. Mar. 26, 2013) (considering content of attachment to

complaint—an EEOC charge of discrimination—and finding that the contents of that attachment

helped demonstrate that plaintiff had adequately alleged Title VII race discrimination claims);

*Phifer v. Sevenson Envtl. Servs., Inc.*, Civ. Action No. 11-169-GMS, 2012 WL 868692, at *8 (D.

Del. Mar. 14, 2012) (same, as to retaliation claim and claim under 42 U.S.C. § 1981).[2] Here, in

light of her citation to Exhibit B in the Complaint, (D.I. 1 at ¶ 11), and the close connection

between the letter's contents and the nature of Plaintiff's allegations in the Complaint, it is clear

that Plaintiff intended to rely on the letter in setting out the substance of her claim. Taken

together with the allegations in the body of the Complaint, the letter provides clear and sufficient

indication of Plaintiff's claim that she was discriminated against based on her gender, and that

she was the subject of sexual harassment. *Cf. Wynn-Mason v. Levas Communications, LLC*,

Civil Action No. 09–1235, 2010 WL 2816651, at *4 (E.D. Pa. July 15, 2010) (finding that the

plaintiff had alleged sufficient facts to allow an inference of discrimination based on gender,

where the plaintiff claimed her compensation was less than that of a male in the same position

with the same responsibilities).

## 2. "Severe or pervasive" discrimination

Defendant next asserts that Plaintiff has failed to sufficiently allege the second element of

a hostile work environment claim—that any sex-based discrimination was severe or pervasive.

(D.I. 27 at 5-6) Defendant asserts that is so both because the Complaint: (1) does not plead facts

---

[2]      Indeed, in its opening brief, Defendant points to the content of one portion of
Exhibit B when assessing the nature of Plaintiff's allegations. (D.I. 27 at 2)

suggesting discrimination based on gender; and (2) only references two "specific examples" of Kloepfer's alleged discriminatory behavior (at the January 2007 SOV staff meeting and in the February 2008 incident), which does not indicate a plausible claim of "severe or pervasive" conduct. (*Id.*) As to the first ground, as noted above, after taking into account the Complaint and the exhibits attached thereto, Plaintiff has provided sufficient facts to plausibly claim that she was personally subjected to gender-based discrimination.

With regard to Defendant's second challenge—whether the facts asserted could plausibly demonstrate that this discrimination was "severe or pervasive"—the United States Supreme Court has held that this determination should be made "by looking at all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). If a plaintiff proffers only "vague statements and legal conclusions" as to this element, that is insufficient; she must instead allege "specific facts which, if true, would allow a conclusion that Plaintiff experienced treatment severe or pervasive enough to create an abusive working environment." *Badrinauth v. Metlife Corp.*, No. Civ.A. 04-2552(JAG), 2006 WL 288098, at *5 (D.N.J. Feb. 6, 2006) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see also Graves v. Ancora Psychiatric Hosp.*, Civil No. 10-369 (RBK/KMW), 2012 WL 1108505, at *4 (D.N.J. April 2, 2012) (dismissing complaint for failure to state a claim where the plaintiff alleged that she was "'harassed humiliated and berated'" by her supervisor "without enumerating or describing any specific alleged instances of discriminatory treatment.") (internal quotation marks and citation omitted).

Here, Defendant is correct that in the portion of the Complaint where Plaintiff most clearly attempts to reference Kloepfer's allegedly discriminatory conduct in 2007, Plaintiff's allegations are vague. In that section, Plaintiff refers to "weekly, sometimes daily" "discriminatory behaviors" that are not bolstered by additional facts. (D.I. 1 at ¶¶ 7-8) However, the content of Exhibit B again fills in these factual gaps. It references multiple and sufficiently specific allegations of Kloepfer's violent, "threatening, and sexually charged behavior" toward Plaintiff in this same time period. (*Id.*, ex. B. at 1)[3] Taken together with the factual allegations in the Complaint regarding the February 2008 incident, Plaintiff has thus provided sufficient detail to withstand a motion to dismiss on this ground. *See e.g., Petril v. Cheyney Univ. of Pa.*, 789 F. Supp. 2d 574, 579 (E.D. Pa. 2011) (finding plaintiff sufficiently pled severe and pervasive conduct where she alleged that her co-worker "repeatedly asked her out, called her sexy, approached her while she was alone in a locker room, asked her multiple times to have sex with him, sent her inappropriate messages, and followed her car after work"); *O'Neal v. State University of N.Y., Health Sci. Ctr. Brooklyn*, Civil Action No. CV-01-7802 (DGT), 2003 WL 1524664, at *1, *8 (E.D.N.Y. Mar. 24, 2003) (finding allegations of severe and pervasive conduct sufficiently pled where plaintiff alleged that supervisor's discriminatory behavior included repeated instances of closing the plaintiff's office door, chastising and verbally

---

[3]     Plaintiff's answering brief sets out similar allegations of Kloepfer's repeated harassing and abusive conduct, occurring in roughly similar time periods (i.e., 2007 through early 2008) as the acts referenced in the Complaint and Exhibit B. To the extent the Court references the content of Plaintiff's answering brief in this Report and Recommendation, the Court does not do so in order to take into account the brief's contents when assessing whether Plaintiff has sufficiently pled a hostile work environment claim. Instead, these references are made simply to note how conclusions the Court draws from the content of the Complaint and its exhibits are in line with the tenor of that brief.

attacking the plaintiff in front of clients, and otherwise harassing, embarrassing and injuring her).

### 3.   Discrimination detrimentally affecting Plaintiff or a reasonable person of her sex in her position

Defendant next contends, as to the third and fourth elements of a hostile work environment claim, that: "Plaintiff has failed to allege *discrimination* detrimentally affected her, or a reasonable person of the same sex in Plaintiff's position[, as] she has failed to allege any actual gender discrimination." (D.I. 27 at 5 (emphasis in original))  As this assertion makes clear, Defendant's objection here is not that Plaintiff has not alleged sufficient facts to show that she was *detrimentally affected* by Kloepfer's behavior; instead, Defendant points to insufficient allegations of *gender-based discrimination*.  For the same reasons set out in the Court's analysis of the first element above, the Court finds that Plaintiff has met her burden here.

### 4.   Respondeat superior liability

Lastly, Defendant contends that Plaintiff does not sufficiently allege respondeat superior liability. (D.I. 27 at 5-6)  It asserts that this is so because "Plaintiff acknowledged that DHSS reprimanded Kloepfer for the only actual [assertedly discriminatory] conduct that she alleged." (*Id.* at 6)

Respondeat superior liability is established where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." *Andrews*, 895 F.2d at 1486 (internal quotation marks and citation omitted).  "Thus, if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." *Id.* (internal quotation marks and citation omitted).  The actions of supervisory

12

employees in a position to affect a plaintiff's work situation are imputed to the employer for the purposes of establishing respondeat superior liability. *Ebert v. Office of Info. Sys.*, No. 97-530-SLR, 1998 WL 324923, at *8 (D. Del. June 12, 1998) (citing cases).

Here, Plaintiff alleges that she repeatedly reported Kloepfer's behavior to his (and her) supervisors in late 2007, as well as to other State employees who had an oversight role with respect to human resources issues in her Division, and that these individuals did not take prompt remedial action. (D.I. 1 at ¶¶ 7-9)  Plaintiff also alleges that she repeatedly requested a transfer to an alternate work location (other than reporting to Kloepfer) during this time, only to have her requests denied without explanation. (D.I. 1 at ¶ 8; *id.*, ex. B at 2)  These allegations, read in conjunction with the remainder of the Complaint and Exhibit B, are sufficient to satisfy Plaintiff's burden as to this fifth element of a hostile work environment claim. *Cf. Ebert*, 1998 WL 324923, at *9 (denying motion for summary judgment where plaintiff produced sufficient evidence to establish that her manager participated in a hostile work environment, complained repeatedly to her manager and her supervisor to no avail, and where it could be inferred that these individuals were "middle-management employees" whose actions could be imputed to the defendant company).

**B.     Conclusion**

After construing the Complaint and its exhibits liberally, and in the light most favorable to the Plaintiff, the Court finds that Plaintiff has set out a plausible Title VII hostile work environment claim, in sufficient detail to give Defendant fair notice of what the claim is and the grounds upon which it rests.

**IV.   CONCLUSION**

For the above reasons, the Court recommends that the District Court DENY Defendant's Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, http://www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated:  August 30, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

14